### Ex parte Ronald SHORT, alias Gary Donnelly.

#### No. 40975.

Court of Criminal Appeals of Texas.

Jan. 24, 1968.

George C. Thompson, Jr., Fort Worth, for appellant.

Frank Coffey, Dist. Atty., R. W. Crampton, Asst. Dist. Atty., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

### OPINION

BELCHER, Judge.

This is an appeal from an order entered in a habeas corpus proceeding remanding appellant to custody for extradition to the State of Illinois.

At the habeas corpus hearing, the state introduced the executive warrant issued by the Governor of Texas. The warrant recites that the appellant stands charged by complaint, warrant, and supporting papers before the proper authorities, with the crime of murder committed in Illinois. The warrant further recites that the Illinois demand is accompanied by authenticated copies of said complaint, warrant, and supporting papers.

The executive warrant of the Governor of Texas, which appears regular on its face, made out a prima facie case authorizing the remand of appellant to custody for extradition. Ex parte Fant, Tex.Cr. App., 400 S.W.2d 332; Ex parte Thompson, Tex.Cr.App., 420 S.W.2d 709.

No question of identity is presented as to the appellant being the person named in the executive warrant of the Governor of Texas.

As ground for discharge, the appellant contends that he introduced sufficient evidence to overcome the prima facie case made by the extradition warrant that he was in Illinois when the alleged murder was committed.

The appellant did not testify but called witnesses Rohan, Donnelly, D'Viella, and Caplen in support of his contention.

Officer Rohan of Chicago, a police officer, testified that about 11 a.m., Friday, October 22, 1965, he saw the body of the deceased in a hotel room in Chicago, Illinois; that his death was caused by multiple stab wounds in the left chest; and that it was determined that he had died between 2 a.m., and 10:20 a.m., October 22, 1965.

Delores D'Viella testified that she was the switchboard operator in the Chicago hotel where the body of the deceased was found; that her hours of employment were from 8 a.m., to 4 p.m., and that she was on duty during those hours on Thursday, October 21, 1965. On cross-examination, she identified the appellant as the person she saw in the lobby of the hotel with the deceased's dogs about 10 a.m., October 21, 1965; and that she had seen the appellant two or three times before that date.

Shirley Caplen testified that she lived in an apartment next to that of the appellant in an apartment house in Kansas City, Missouri; that she saw the appellant on Thursday morning, October 21, 1965, and again about 5:10 p.m., that day, and last saw him that day about 11 p.m.; and that she next saw the appellant Friday morning about 7 a.m., then about 5 p.m., that day, and again Saturday morning; and that she heard about deceased's death Saturday morning, October 23, 1965.

Jerry Patrick Donnelly testified that he and the appellant lived together in an apartment in Kansas City; that he drove the appellant to work about 7:45 a.m., October 21, 1965, and picked him up after work that day and they returned to the apartment and ate dinner; that after watching television for a brief time, the appellant visited Shirley Caplen in her apartment, and returned to their apartment about 11 p.m., Thursday, October 21, 1965, where they spent the night; that he took the appellant to his place of employment about 8 a.m., Friday morning, and next saw him about 4:30 p.m., October 22, 1965; and they heard about deceased's death the next morning, Saturday, October 23, 1965.

In rebuttal, the state called James J. Strickland, an area representative of an airline in Fort Worth, who testified that he was familiar with the Chicago airport but not the one in Kansas City; and that he was generally familiar with the flight schedules between Chicago and Kansas City, Missouri. Testifying from a book of flight schedules, Strickland stated that according to the book there were flights from Kansas City to Chicago at 7:45 a.m., and 8:00, 8:20, 9:30, and 10:15 a.m., and at 7:15 p.m., and 8:40 p.m.; that the flights from Chicago to Kansas City were at 12:10 a.m., 12:50, and 3:50 a.m. He further testified that, according to the information in the book, a flight originating by limousine in downtown Kansas City to Chicago, or, vice versa, was "quite possible" or "could be done" in two hours and forty-five minutes, assuming there was a flight available.

Although, the deceased may have died between 2 a.m., and 10:20 a.m., October 22, 1965, the evidence offered by the appellant is not sufficient to overcome the presumption raised by the extradition warrant that the appellant was in Illinois at the time

the injuries were inflicted causing the death of the deceased.

The trial court did not abuse its discretion in remanding the appellant for extradition.

The judgment is affirmed.